FILED

2006 Sep-29  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AMBER RAULS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-06-S-378-NE** |
| | ) | |
| **FINANCIAL COLLECTION** | ) | |
| **AGENCY OF TENNESSEE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Amber Rauls, commenced this action on February 24, 2006, against defendant Financial Collection Agency of Tennessee, Incorporated ("FCA"), alleging a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("the Act"), as well as supplemental state law claims for negligence and invasion of privacy.[1]  The record reflects that service was effected on FCA, by certified mail, by April 6, 2006,[2] but that FCA has not answered or otherwise responded to the complaint.  The clerk entered the default of FCA pursuant to Federal Rule of Civil Procedure 55(a) on May 12, 2006.[3]

---

[1] *See* doc. no. 1 (Complaint).

[2] *See* doc. nos. 3 & 4 (Return of Service cards).  Defendant failed to date the certified mail card when it signed it.  Nonetheless, the latest return on service card was received by the court on April 6, 2006.  Thus, the court concludes that FCA was served with a copy of the summons and complaint by April 6, 2006, at the latest.

[3] Doc. no. 9.

The case now is before the court on plaintiff's application for entry of default judgment.[4]  The court ordered FCA to show cause why default judgment should not be entered against it on the issue of liability, and cautioned FCA that failure to respond to the order would result in the entry of judgment by default, and the scheduling of a hearing to determine plaintiff's damages.[5]  FCA did not respond to the show cause order, despite having received service thereof.[6]  The court also granted plaintiff's motion for leave to withdraw her jury demand, and ordered the parties to appear at a hearing for entry of default judgment and determination of plaintiff's damages.[7]

**A.**     *Liability under the Fair Debt Collection Practices Act*

Upon entry of default, a defendant is deemed to have admitted the well-pleaded allegations of fact set forth in a plaintiff's complaint.  *See, e.g., Nishimatsu Construction Company v. Houston National Bank,* 515 F.2d 1200 (5th Cir. 1975).[8]  Notwithstanding that general principle, "a defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in

---

[4]Doc. no. 6.

[5]Doc. nos. 10, 13.

[6]Doc. nos. 14 & 15 (Notice and Receipt of mailing).

[7]Doc. no. 20.

[8]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the pleadings for the judgment entered." *Id.* at 1206.  Plaintiff alleges violations of

15 U.S.C. §§ 1692c and 1692d.  Section 1692c states, in pertinent part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt —
>
> . . . .
>
> (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

15 U.S.C. § 1692c(a)(3).  Section 1692d provides that

> [a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

**B.**    *Damages under the Fair Debt Collection Practices Act*

An individual asserting a claim against a debt collector under the Act may recover actual damages, statutory damages in an amount not to exceed $1,000, costs, and attorney fees. 15 U.S.C. § 1692k(a). In determining the amount of a defendant's liability, the court may consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). The $1,000 limitation on statutory damages applies to each *action* under the Act, *not* to each violation of the Act, or each unfair debt collection practice. *Harper v. Better Business Services, Inc.,* 961 F.2d 1561, 1563 (11th Cir. 1992).

**C.**    *Pleadings*

The court concludes that plaintiff's complaint alleged sufficient facts to support her claims. With regard to the alleged violations of §§ 1692c and 1692d, plaintiff alleged that employees of FCA repeatedly called her at her place of work for the purpose of collecting an alleged debt. She also alleged that the telephone calls

-4-

continued after both she and her supervisor requested that they cease.  Further, she alleged that FCA used harassing tactics and threats in order to attempt to collect the alleged debt.

With regard to her negligence claim, plaintiff alleged that FCA's actions were "done negligently and without care or concern for the truth or accuracy of the matter asserted and with disregard to Plaintiff's privacy. [FCA]'s acts were for the purpose of illegally coercing Plaintiff to pay the alleged debt."[9]  She also alleged that, as a proximate result of FCA's conduct, she hired an attorney, incurred expenses, and suffered embarrassment, humiliation, and emotional distress.

With regard to her claim for invasion of privacy, plaintiff claims that FCA "wrongfully exploited [her] privacy," and intruded upon her interests in peace, seclusion, and solitude.  She alleges that FCA's actions were offensive to her, and that she suffered injury, including shame, humiliation, and embarrassment, as a result.

**D.**   *Default Judgment Hearing*

The court conducted a hearing on Friday, September 29, 2006, for the purpose of receiving evidence bearing upon plaintiff's application for the entry of default judgment, and the determination of her damages.  FCA did not appear at the scheduled hearing.  Plaintiff appeared, accompanied by counsel, and offered

---

[9]Complaint, at ¶ 17.

evidence.  Plaintiff testified that she was contacted by FCA regarding a debt allegedly owed.  Plaintiff disputes owing the full amount of the debt, although she acknowledges attempting to negotiate with FCA to pay a reduced amount.  She testified that she was called on multiple occasions at her place of work by representatives of FCA, including an individual named Brad Hope.  She and her supervisor, Dr. Timothy C. Edwards, both asked FCA's representatives to stop calling her workplace, but even after these requests, FCA placed approximately fifty telephone calls to plaintiff's work telephone number.  FCA's representatives were at times rude and demeaning in their tone of voice and in the language used to address plaintiff.  FCA's representatives also threatened to obtain a judgment against plaintiff for the amount of the debt allegedly owed, and falsely represented that a judgment already had been entered against her.

Plaintiff also testified that she suffered emotional distress as a result of FCA's conduct.  Specifically, she stated that she lost sleep, lived in a constant state of worry, and suffered headaches.  She was humiliated when her co-workers and supervisor witnessed her crying at work as a result of FCA's repeated telephone calls.  She worried that she would be reprimanded at work, lose her security clearance, or lose her job, because she continually received telephone calls from FCA.  As a result of plaintiff's distress, she sought psychiatric treatment, and incurred medical bills in the

amount of five hundred dollars ($500).

Plaintiff also presented as evidence an audio tape recording of a telephone conversation with Brad Hope, a representative of FCA. The taped conversation was persuasive in supporting plaintiff's allegations that FCA's representatives were rude and abusive, in violation of 15 U.S.C. § 1692d, and that the representatives continued to call her at work, despite being asked to stop, in violation of 15 U.S.C. § 1692c(a)(3).

Counsel also presented evidence of the costs, expenses, and attorney's fees incurred as the result of this litigation. Counsel stated that he invested twenty-two (22) hours of work in this case, and requested to be compensated at a rate of two hundred and fifty dollars ($250) per hour, for a total fee amount of five thousand five hundred dollars ($5,500). Based upon counsel's representations regarding his background and experience, and the work he performed in this case, the court concludes the requested amount is reasonable and fair. Counsel also stated that plaintiff has incurred costs and expenses in the amount of two hundred seventy-seven dollars and forty-eight cents ($277.48), including the payment of a filing fee and postage costs. The court also concludes this amount is reasonable and fair.

**E.**    *Conclusions*

Having found that FCA was duly served with summons and complaint, but

failed to plead or otherwise defend itself in this action, and having found that FCA was served with a copy of the court's order setting the hearing on plaintiff's application for default judgment, but failed to appear at the hearing or to show cause why default judgment should not be entered, and having considered the evidence presented at the hearing, the court hereby finds as follows:

1.     Plaintiff has demonstrated that FCA is in violation of 15 U.S.C. § 1692c(a)(3), as FCA's employees repeatedly contacted plaintiff at her place of employment after she and her supervisor both requested that they no longer do so.

2.     Plaintiff has demonstrated that FCA is in violation of 15 U.S.C. § 1692d, as FCA's employees acted in a harassing, threatening, and abusive manner toward plaintiff.

3.     For FCA's violations of the Fair Debt Collection Practices Act, the court finds that FCA's conduct was pervasive and intentional, warranting imposition of the maximum statutory penalty of $1,000.00.

4.     Plaintiff is entitled to recover costs in the amount of $277.48, and attorney's fees in the amount of $5,500.00, totaling $5,777.48.

5.     Plaintiff is entitled to recover compensatory damages for mental and emotional distress on her state law claims for negligence and invasion of privacy. Under the circumstances, the court finds the amount of $1,500.00 would adequately

compensate plaintiff for the mental and emotional distress she suffered.

A Final Judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 29th day of September, 2006.

_____
United States District Judge